A. LEROY BRUTUS *v*. WARREN WRIGHT, JACK CONRAD, WALTER REYNOLDS, FRANK CLARK, WILLIAM CLEM, WILMA JEAN LANG, CHARLES KAY, ANCIL DILL, RICHARD HUBER, AND HELEN GEPHART, INDIVIDUALLY AND AS CONSTITUTING ALL OF THE MEMBERS OF THE BOARD OF EDUCATION OF THE METROPOLITAN SCHOOL DISTRICT OF WARREN COUNTY, INDIANA.

[No. 3-1273A180. Filed March 6, 1975.]

*Ralph Bower, Stephen Bower,* of Kentland, for appellant.

*James E. McCabe,* of Williamsport, *George M. Sammons,* of Kentland, for appellees.

HOFFMAN, J.—Plaintiff-appellant A. Leroy Brutus (taxpayer) brought a public lawsuit[1] against defendant-appellee Board of Education of the Metropolitan School District of Warren County, Indiana, and its members (Board) questioning the wisdom of an additional appropriation then under consideration by the Board for certain modifications of the Seeger Memorial High School building (School) ; the bidding procedures used therefor by the Board; and the Board's proposed issuance of bonds to finance such construction. The defendant-Board moved for summary judgment, which was granted by the trial court, and the taxpayer perfected this appeal.

The record of this cause is without conflict that according to a notice posted publicly and placed in local newspapers on March 21, 1973, and other dates, the Board had adopted on March 14, 1973, "a resolution authorizing the issuance and sale of bonds" to finance the School modification project pursuant to a petition "filed by more than fifty (50) owners of taxable real estate in said Metropolitan School District." Another such notice was given on the same day, advising the public that an additional emergency appropriation for the construction would be considered at the Board's April 11, 1973, meeting. Both such notices advised the public of the remonstrance avenues applicable to each matter.

Thereafter, on March 27, 1973, the taxpayer filed a complaint under the Public Law Suit Statutes questioning, *inter alia,* the wisdom of the modification project and the manner of reception of bids by the Board, and seeking an injunction preventing the reception of bids and the proposed construction. The following day, the Board was served with summons at its meeting. Also, at that meeting, the Board reaffirmed April

---

1. IC 1971, Title 34, Art. 4, Ch. 17.

11, 1973, as the date for consideration of the additional emergency appropriation for the School modification.

The next day, March 29, 1973, taxpayer filed an additional paragraph of complaint questioning the existence of an emergency warranting the issuance and sale of the bonds, and seeking an injunction preventing the Board from so acting.

At the April 11th meeting of the Board, it considered matters relative to the appropriation and bond issue, and asked for comments thereon from its members and the members of the public in attendance. No one spoke on these subjects, however, one Board member voted against all such matters submitted to a vote at the meeting.

Subsequent to this meeting defendant-Board moved the trial court to enter summary judgment in its favor on the ground that no objections to the appropriation or bond issue had been voiced at the April 11, 1973, meeting. The trial court so found, and further found that the taxpayer had failed to exhaust available administrative remedies prior to the filing of this action and, thus, that this action was prematurely filed and summary judgment should be entered.

In doing so, the trial court correctly applied the law to the bond and appropriation issues before it and correctly found that inasmuch as the material facts were undisputed, summary judgment should be entered.

IC 1971, 34-4-17-8 (Burns Code Ed.), provides, in part:

"(b) Exhaustion of Administrative Remedies. As a condition precedent to bringing any public lawsuit, *a plaintiff must first exhaust all the administrative remedies available to him under applicable law, including but not limited to the filing of a remonstrance* where the issues raised could have been raised by such filing under applicable law; and no plaintiff may commence a public lawsuit or be named as a party therein unless one of the plaintiff's has complied with this provision.

"(c) Matters to be Heard. Where as a condition precedent to the construction, financing or leasing of a public improvement the municipal corporation is required to hold a public hearing thereon preceded by public notice thereof, and hearing is held and the notice

is given in accordance with applicable law, *the plaintiff in a public lawsuit shall not be entitled to raise any issue in the public lawsuit which he could have but did not raise at such hearing;* and any matters or issues relating to any procedural matters which were not raised and could have been redone or corrected following such hearing are hereby declared to be irregularities and not jurisdictional to the power of the municipal corporation or its governing body in connection with such construction, financing or leasing." (Emphasis supplied.)

As to the appropriation issue, it is to be noted that the Board is required by law to hold a public hearing after notice on additional emergency appropriations in order to allow taxpayers an opportunity to be heard with regard to such appropriations. See: IC 1971, 6-1-1-24 (Burns Code Ed.) ; and *Johnson, City Comptroller* v. *Lenz* (1936), 209 Ind. 627, 200 N.E. 249. In the instant case, there is no dispute that the Board properly held such a hearing on the appropriation challenged by taxpayer after giving the required notice. However, no taxpayer-plaintiff, or other person, voiced any objection to such appropriation at such hearing, although one Board member did vote against it. While the taxpayer asserts in his brief that "there is a dispute [as to] whether, as a matter of fact, a taxpayer did object" at such hearing, a thorough examination of the record herein discloses that no such dispute was before the trial court.

Appellant attempts to show such a factual issue by reference to his "Affidavit in Opposition to Defendant's Motion for Summary Judgment." Such affidavit quoted the minutes of the Board's meeting at which the appropriation was considered, and then stated:

"[T]hat *the records disclose* that there were objections to said appropriation. That said objections were made by Mrs. Gephart *who voted naye* on all the resolutions incidental to said $400,000.00 bond issue and appropriation made, etc." (Emphasis supplied.)

It is apparent that the affidavit does not raise an issue as to whether objections were voiced at the hearing as a matter

of fact, but rather draws a conclusion as to the legal effect of the unexplained "naye" vote at the hearing as disclosed by the record herein.

We need not reach the question of whether, or under what circumstances, a Board member might also occupy the role of a remonstrating taxpayer to conclude that a "naye" vote is insufficient to constitute the necessary remonstrance. A simple, general objection made at a public hearing without assigning any reason therefor is insufficient to preserve any issue for a public lawsuit under the requirements of IC 1971, 34-4-17-8(c), *supra,* which provides that issues not raised in any required public hearings may not be raised in a public lawsuit. More importantly, perhaps, in the present instance, the action of a Board member in merely voting upon a proposition before the Board cannot be deemed a remonstrance from a taxpayer. Such an act is exclusively the action of the office wherein the right to vote is vested.

Thus, the trial court properly held that on the undisputed facts before it, no taxpayer-plaintiff raised any issue as to the appropriation at such hearing as required by IC 1971, 34-4-17-8(c), *supra,* and that a condition precedent to questioning such appropriation through a public lawsuit had not been fulfilled. The trial court's granting of the Board's motion for summary judgment was correct as to this issue.

The trial court also acted properly in granting summary judgment as to that aspect of the taxpayer's action which questioned the issuance of bonds by the Board. IC 1971, 6-1-1-25 (Burns Code Ed.), which delineates the procedures for appeals to the State Board of Tax Commissioners from determinations by municipal corporations to issue bonds, provides, in pertinent part:

> "Ten [10] or more taxpayers in such municipal corporation * * * who will be affected by the proposed issuance of such bonds or other evidences of indebtedness and who may be of the opinion that such bonds or other evidences of indebtedness should not be issued, or that the proposed

issue is excessive for the proposed purpose thereof, may file a petition in the office of the county auditor of the county in which such municipal corporation is located, within fifteen [15] days after notice as aforesaid shall have been given that the issuance of such bonds or other evidences of indebtedness shall have been determined upon by such municipal corporation, setting forth their objection thereto and facts showing that the proposed issue is unnecessary, unwise or excessive, as the case may be. Upon the filing of any such petition the county auditor shall immediately certify a copy thereof, together with such other data as may be necessary in order to present the questions involved, to the state board of tax commissioners, and upon the receipt of such certified petition and information of the state board of tax commissioners shall fix a time and place for the hearing of such matter, * * *."

The record now before the court reflects no attempt by the taxpayer or others similarly situated to exhaust this statutory administrative remedy at any time. Indeed, the paragraph of taxpayer's complaint questioning the bond issue was filed on March 29, 1973, less than fifteen days following the Board's notice on March 21, 1973, of its determination to issue such bonds. Thus, the administrative remedy now under consideration was still available to the taxpayer at the time he commenced this aspect of his lawsuit.

The taxpayer has attempted to justify his failure to utilize this administrative remedy by asserting that under the Public Lawsuit Statute he was required to commence his action within ten days of the first notice issued by the Board for the sale of the bonds, and that such notice was published by the Board on March 21, 1973. This attempted justification is erroneous.

IC 1971, 34-4-17-8, *supra,* further provides, in part:

"(a) Jurisdiction of the Trial Court. No public lawsuit shall be brought, and no trial court shall have jurisdiction of any public lawsuit which is brought, more than ten [10] days after the *first publication required by law for the sale of bonds of a municipal corporation * * *.*" (Emphasis supplied.)

Also, IC 1971, 6-1-1-25, *supra,* which applies to school corporations, requires that in the event the proper officers

determine to issue bonds in an amount exceeding $5,000, they shall publish notice of such determination to issue, and afford affected taxpayers the opportunity to remonstrate. Further, IC 1971, 20-5-4-3, Ind. Ann. Stat. § 28-1729 (Burns 1970), requires that once approved for issue such bonds shall be sold at public sale as provided by Acts 1943, ch. 178 [IC 1971, 19-8-5-2, Ind. Ann. Stat. § 61-414 (Burns 1961)], which incorporates the publication provisions of IC 1971, 5-3-1-2 (Burns Code Ed.).

This latter statute requires, in addition to the notice of issuance prescribed by IC 1971, 6-1-1-25, *supra,* a publication of a notice of the sale of bonds, the first publication of which shall be made no later than one week prior to the actual date of sale of the bonds. Thus, the statutory scheme clearly establishes a requirement of two types of published notices: First, notices of, and contemporaneous with, any determination to issue bonds; and, Second, additional notices offering the bonds for public sale prior to their actual sale.

As stated hereinabove, this latter notice must offer such bonds in amounts exceeding $5,000 for public sale to the highest bidder no later than one week prior to the date of their sale as a prerequisite to their lawful sale. Because the certainty, date and other particulars of the sale must be included in any legally adequate notice of sale[2] and cannot be determined until the remonstrance procedures before the issuing entity and the State Board of Tax Commissioners to question such bond issues have been foreclosed or exhausted, the publication requirements of IC 1971, 34-4-17-8(a), *supra,* must refer to this publication of notice of the finalized sale of such bonds. The statutory sequence of notice of determination to issue, availability of remonstrance avenues, and the subsequent availability of appeal procedures; and the wording of the Public Lawsuit Statutes clearly disclose that the public lawsuit is a final remedy which may be invoked

2. See: IC 1971, 19-8-5-3, Ind. Ann. Stat. § 61-415 (Burns 1961).

only after all appropriate administrative remedies have been fully pursued without success.

The notice relied upon by the taxpayer in commencing this public lawsuit was entitled, "Notice to Taxpayers Metropolitan School District of Warren County, Indiana." It advised owners of taxable real estate that a petition had been filed for the purpose of providing funds to be applied to the cost of construction and equipment of an addition to the School, and that a remonstrance against the *issuance* of the resulting bonds might be filed. The taxpayers were further notified that on March 14, 1973, the Metropolitan Board of Education did "adopt a resolution authorizing the issuance and sale of bonds * * *." The notice then restated that "[o]bjections to the *issuance* of said bonds may be made * * *." (Emphasis supplied.)

It is clear from the text of this notice that it related to the Board's determination to issue bonds and not to any impending sale of such bonds. While such notice arguably implied that it was a notice of both issuance and sale, the reference to a sale could not have been a "first publication required by law for the sale" of such bonds within the meaning of IC 1971, 34-4-17-8(a), *supra*. This is because such notice came in advance of the time when the certainty, date, and other particulars incident to any sale of its bonds could have been known to the Board. Furthermore, the notice relied upon by the taxpayer contained no such required information.

The significance to the case at bar of the inadequacy of such notice as a notice of sale is apparent. Inasmuch as the taxpayer—plaintiff herein filed his public lawsuit subsequent to a required notice of issuance of the bonds by the Board but prior to any required notice of their public sale, in contravention of the provisions and intent of the Public Lawsuit Statutes, such lawsuit was prematurely filed.

In light of the foregoing, the trial court properly held that the taxpayer had failed to exhaust the administrative

remedies available to him, and further that he had prematurely filed this aspect of the instant case. Cf: *Craig, etc.* v. *School City of Gary, etc.* (1965), 138 Ind. App. 261, 211 N.E.2d 616 (transfer denied). Therefore, the trial court properly granted summary judgment on this issue.

The next issue is whether the trial court's entry of summary judgment properly disposed of the taxpayer's complaint for an injunction against the Board preventing it from illegally accepting any bids for the project. Appellant-taxpayer had standing to seek such equitable relief to prevent unlawful acts by the Board. See: *Meinschein* v. *J. R. Short Milling Co.* (1973), 157 Ind. App. 53, 298 N.E.2d 495, 37 Ind. Dec. 504. And, the taxpayer's complaint of March 27, 1973, clearly raises a genuine issue of fact as to whether the Board had advertised for, and was about to accept bids for, the project in contravention of IC 1971, 6-1-49-1 (Burns Code Ed.), which provides, in pertinent part:

> *"Bids for the construction of such improvement shall not be advertised for or received until the expiration of the time within which interested taxpayers may file a petition for review of, or remonstrance against, the issuance of such bonds* or other evidence of indebtedness to be heard by the state board of tax commissioners as the same is now provided by law, and in case such petition for review or remonstrance is filed, then no advertisement for bids for the construction of such improvement shall be made and no bids shall be received during the time such petition for review or remonstrance shall remain pending before said state board of tax commissioners, except that said state board may, by an order duly entered in such pending proceedings, require the officers of such municipality to proceed to advertise for and receive bids * * *." (Emphasis supplied.)

While this issue may well have been rendered moot by events subsequent to the proceedings in the tiral court, the record herein does not disclose such fact. Accordingly, the trial court's entry of summary judgment as to this issue must be reversed and remanded for further proceedings.

Another issue presented by this appeal concerns the propriety of an award to the appellees herein by the trial court

of expenses occasioned by a postponement of a hearing chargeable to appellant. As to this issue, the record discloses that appellant's initial trial counsel withdrew his appearance on a Friday before the Monday on which such hearing was scheduled and notified the taxpayer of such fact. Appellant's counsel had withdrawn due to illness, but had failed to notify the trial court or counsel for the appellees that the hearing would have to be postponed. And, appellant also failed to give such notice.

Thereafter, the Board filed with the trial court a "Petition for Defendants' Expenses Incurred from Delay" and an affidavit "In Support of Petition for Expenses Incurred from Delay" seeking such relief under Ind. Rules of Procedure, Trial Rule 53.4. Subsequent to a hearing on the petition, the trial court awarded such expenses.

The taxpayer's first contention with regard to this issue is that the continuance was entered by agreement of counsel and thus such expenses cannot be awarded under Rule TR. 53.4, *supra*. However, the record reflects that the delay necessitating the continuance was occasioned by the taxpayer or his counsel; that the trial court granted a continuance at the behest of appellant-taxpayer; and that subsequent to the granting of such continuance the appellees agreed that the court would determine the time at which the hearing would be set. No agreement of appellees to the continuance itself appears in the record.

The taxpayer also contends that good cause was shown for such delay and that as a result expenses should not have been awarded. The awarding of such expenses rests within the sound discretion of the trial court and no abuse of that discretion has been shown. Cf: *Gentry* v. *Lakey* (1971), 150 Ind. App. 612, 276 N.E.2d 857. The taxpayer further asserts that conditions cannot be attached to the granting of a continuance subsequent to its entry. However, Rule TR. 53.4, *supra,* expressly authorizes such an award, without limitation as to time. Lastly, the

taxpayer contends that any sanctions should be aganist his attorney who caused the delay. However, the act of his attorney is the act of the client, and thus such expenses may properly be taxed to a litigant for the acts of his counsel. Cf: *Krill* v. *Carlson* (1920), 74 Ind. App. 47, 128 N.E. 612.

The final issue which must be considered herein concerns the wording of the trial court's entry of summary judgment. Appellant has preserved in his assignment of errors the contention that the judgment of the trial court incorrectly fails to state that no genuine issue existed as to any material fact. However, there can be no doubt that the order of the trial court was an entry of summary judgment, inasmuch as it so stated.

While a trial court should make such a finding, such insubstantial defects in judgments should not be the basis for a reversal. Ind. Rules of Procedure, Appellate Rule 15(D), provides, in pertinent part:

"Defect in Form no Ground for Reversal. No judgment shall be stayed or reversed, in whole or in part, by the court on appeal for any defect in form, variance or imperfections contained in the record, pleadings, process, entries, returns, or other proceedings therein, which by law might be amended in the court below, but such defects shall be deemed to be amended in the court on appeal * * *."

Accordingly, the judgment herein is hereby deemed to be appropriately amended.

For the reasons stated hereinabove, the judgment of the trial court is affirmed in all respects except upon the issue of enjoining the Board from accepting certain bids, which holding is reversed and remanded for further proceedings.

Affirmed in part and reversed in part.

Staton, P.J. and Garrard, J., concur.