EDWARD L. C. BROOMES, EDWARD EDWARDS, KATIE MASON, CEASAR BONILLA, AND J. WINSTON HARPER *v.* CITY OF EAST CHICAGO, INDIANA, A MUNICIPAL CORPORATION ET AL.

[No. 3-575A101. Filed March 10, 1976. Rehearing denied April 7, 1976. Transfer denied June 17, 1976.]

*David S. Stevens,* of East Chicago, *Melvin Morris,* of East Chicago, for appellants.

*Saul I. Ruman,* of Hammond, *Richard J. Lesniak,* of East Chicago, *Barnard M. Tetek,* of Gary, for appellees. *Theodore L. Sendak,* Attorney General, *David H. Kreider,* Assistant Attorney General, for Amicus Curiae, State Board of Accounts of Indiana.

HOFFMAN, J.—Plaintiffs-appellants Edward L. C. Broomes, Edward Edwards, Katie Mason, Ceasar Bonilla and J. Winston Harper (collectively referred to herein as taxpayers) commenced this public lawsuit to secure an injunction preventing the performance of a construction contract between defendants-appellees City of East Chicago, Indiana, and others (collectively referred to herein as the City) and Metro Construction Company (Metro), and a declaratory judgment adjudicating such contract to be illegal and void. The taxpayers' complaint alleged that such contract had been procured through a fraud by Metro, and that Metro had failed to follow

applicable bidding procedures. After a consolidated hearing, the trial court refused to issue an injunction, and adjudicated the contract in issue to be valid and binding. This appeal was subsequently perfected by the taxpayers.

The first issue presented by this appeal is whether the trial court erred in holding that the taxpayers failed to exhaust their remedies relative to the awarding of this contract before commencing this public lawsuit. Our Public Lawsuits statute[1] requires that any plaintiff bringing an action within its scope must first exhaust all the administrative remedies available to him as a condition precedent to maintaining such action. *See,* IC 1971, 34-4-17-8 (b) (Burns Code Ed.). Additionally, IC 1971, 34-4-17-8 (c) (Burns Code Ed.), provides that where a municipal corporation is required by law to hold a public hearing, preceded by public notice thereof, before commencing the construction of a public improvement, and such a hearing is actually held, a public lawsuit plaintiff shall not be entitled to raise any issue in such lawsuit which he could have, but did not raise at such hearing.

In deciding the question of the exhaustion of administrative remedies by these taxpayers, it is important to examine the exact wording of IC 1971, 34-4-17-8 (b), *supra:*

"Exhaustion of Administrative Remedies. As a condition precedent to bringing any public lawsuit, a plaintiff must first exhaust all the administrative remedies available to him under applicable law, including but not limited to the filing of a remonstrance *where the issues raised could have been raised by such filing under applicable law;* and no plaintiff may commence a public lawsuit or be named as a party therein unless one of the plaintiffs has complied with this provision." (Emphasis supplied.)

This subsection, when read in conjunction with the definition of the word "law" contained in IC 1971, 34-4-17-1 (d) (Burns Code Ed.) clearly requires that before it will operate as a

---

1. IC 1971, 34-4-17-1, *et seq.* (Burns Code Ed.).

bar to an action by a public lawsuit plaintiff, some statutory remedy before the municipal corporation must be in existence. This court is unaware of, and the parties have not shown the existence of, any such remedy applicable to the submission of the bidding documents required by IC 1971, 5-16-1-1, *et seq.,* (Burns Code Ed.). Indeed, as contended by the parties in reference to another issue, the reception of bids by such a municipal body is arguably a ministerial act under IC 1971, 19-7-4-21(6) (Burns Code Ed.), notwithstanding the requirement of IC 1971, 5-16-2-1 (Burns Code Ed.), that such reception be made at an open and public meeting.

It must be concluded that no administrative remedy was available to the plaintiffs-taxpayers in the case at bar within the meaning of IC 1971, 34-4-17-8(b), *supra,* and, therefore, that this action is not barred by such section. *Cf: Brutus* v. *Wright* (1975), 163 Ind. App. 366, 324 N.E.2d 165.

The taxpayers' action is also not barred by IC 1971, 34-4-17-8(c), *supra.* Such section is applicable only "[w]here as a condition precedent to the construction, financing or leasing of a public improvement the municipal corporation is required to hold a public hearing thereon preceded by public notice thereof, and hearing is held and the notice is given in accordance with applicable law ***." In the case at bar there is no contention that the City was required to hold a public hearing on the subject of the reception of bids for the improvements.

The trial court erred in holding that these taxpayers were required to show an exhaustion of remedies in order to maintain their action.

The second issue presented by this case concerns the bidding procedures utilized by the City in awarding a contract to Metro for the construction of improvements to certain parks. In particular, the taxpayers challenge the adequacy of the financial statement submitted by Metro with its bid. The

trial court held that such financial statement was sufficient under the applicable statutory requirements.

The financial statement which was submitted by Metro with its bid was made, in part, on a form designated for such purpose by The State Board of Accounts of Indiana, such form being designated as "General Form No. 96-a."

The six-page portion of such form entitled "Contractor's Financial Statement" was left entirely blank by Metro, save for its name and address, a statement that one "Charles J. Zordani" was authorized to conduct business for Metro, and the signatures of the three partners comprising the partnership. However, the notation "see attached" was made at the top of the form, and personal balance sheets for "Lawrence and Riva Bursten" and "Solomon and Gertrude Seidel" were appended to the form.

IC 1971, 5-16-1-2, *supra,* which is applicable to contracts such as that at issue in the case at bar, provides, in pertinent part:

"Sworn questionnaire to accompany bids — Financial statements — Aid in determining qualifications. — Whenever the aggregate costs of any work or improvement will be five thousand dollars [$5,000] or more, for the purpose of enabling such board, commission, trustee, officer or agent to ascertain and determine which of the bidders submitting bids for the performance of any such public work is, in the judgment of such board, commission, trustee, officer or agent, the lowest and/or best bidder and to exercise intelligently the discretion hereby conferred on such board, commission, trustee, officer or agent each bidder shall be required to submit under oath with and as a part of his bid *** a financial statement: ***. *The statements hereby required shall be submitted on form which shall be prescribed by the state board of accounts.* *** [T]he forms so prescribed are here prescribed as the forms *which shall hereafter be used* by all such boards, commissions, trustees, officers and agents *in obtaining the information which is required in the administration of this act* [5-16-1-1—5-16-1-3]. If the information submitted by any bidder on the forms herein prescribed is found, on

examination, to be unsatisfactory, *the bid submitted by such bidder shall not be considered."* (Emphasis supplied.)

We believe that this statute was intended by our Legislature to ensure that all bidders on public works furnish, in writing, with their bid such information as our State Board of Accounts may deem necessary for the contracting entity to intelligently evaluate each such bidders' financial ability to complete the project on which he is bidding. The form which our State Board of Accounts has prescribed for this purpose is the "General Form No. 96-a" mentioned hereinabove.

Any attempt by such bidder to omit any substantial part of the applicable financial information requested on "Form No. 96-a" must, therefore, be regarded as an attempt to deprive the contracting entity of information which our Legislature had deemed necessary to any intelligent selection of a contractor for the public improvement. Such is undoubtedly the situation envisioned by our Legislature when it provided in IC 1971, 5-16-1-2, *supra,* that when the information submitted by a bidder on the prescribed form is "unsatisfactory", his bid "shall not be considered."

An examination of the "Form No. 96-a" submitted by Metro in the case at bar reveals that no statement of any kind was made thereon relative to Metro's financial condition. Furthermore, the personal balance sheets of two of Metro's partners which were appended to Metro's "Form No. 96-a" disclose nothing relative to Metro's financial condition, and thus also do not furnish the type or scope of information requested on such form. In short, Metro's bid was submitted without any information as to its assets and liabilities.

The case at bar thus presents a situation where a bidder on a public works project has failed to comply even minimally with the financial disclosure requirements of IC 1971, 5-16-1-2, *supra.* While a different result might well be reached in a case where a more substantial compliance with such requirements has been made, it must be concluded that Metro's

bid on this project was "unsatisfactory" as a matter of law under IC 1971, 5-16-1-2, *supra*, and that the City erred in considering such bid.

For the reasons stated hereinabove, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

Staton, P.J. and Garrard, J., concur.

NOTE.—Reported at 342 N.E.2d 893.