STATE OF INDIANA *v.* HARRY D. MORAND.

[No. 2-874A193. Filed June 30, 1976.]

Theodore L. Sendak, Attorney General, James Bopp, Jr., Deputy Attorney General, for appellant.

Howard J. DeTrude, Jr., John W. Cotner, Kightlinger Young Gray & DeTrude, of Indianapolis, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—Defendant-Appellant, State of Indiana (the State), appeals a judgment permanently enjoining the State from compelling Plaintiff-Appellee, Harry D. Morand, and other State employees similarly situated (Morand) to involuntarily deplete their accumulated earned overtime hours, the State claiming the trial court erred in issuing the permanent injunction because of failure to exhaust administrative remedies.

We affirm.

## FACTS

The facts and evidence most favorable to the trial court's judgment are as follows:

On December 27, 1972, Morand[1] filed his complaint in the Marion Superior Court Sitting En Banc as the Court of

---

1. This case was consolidated in the trial court with George O. Davis v. State of Indiana, Cause No. GT 73-1, on October 28, 1974.

Claims. The complaint alleged that he represented an ascertainable class of State employees who had been wrongfully denied payment for accumulated earned overtime hours and demanded payment for such overtime from the State.

Morand was a Correctional Officer at the Indiana State Farm located at Putnamville, Indiana and a member of Local 1537 of the American State-Federal Council for State Employees. The proposed class included all Indiana State employees under the jurisdiction of the State Personnel Division, Department of Administration, State of Indiana.

On March 4, 1974, a hearing was conducted upon the propriety of maintaining Morand's cause as a class action and upon Morand's "Motion for Preliminary Injunction and Hearing."

On March 12, 1974, the trial court entered its "Findings of Fact, Conclusions of Law and Order," upholding the cause as a valid class action pursuant to Ind. Rules of Procedure, Trial Rule 23 and permanently enjoining the State ". . . from compelling State employees, under the jurisdiction of the State Personnel Division, Department of Administration, to involuntarily deplete their accumulated earned overtime hours. . . ."

The State appeals.

## ISSUE

The single issue preserved by the State's "Motion To Correct Errors" is:

Did the trial court err in issuing the permanent injunction because Morand and his class had failed to exhaust their administrative remedies as provided by IC 1971, 4-15-2-35 Burns Code Ed.)[2] (The New Act)?

The State contends Morand's claim that he and others were involuntarily forced to stay home on regularly scheduled work days to reduce their accumulated earned overtime hours is a

---

2. Due to the limited issue presented, we need not consider the merits of Morand's claims or the merits of the trial court's decision to pemanently enjoin the State.

separate and distinct grievance from the one presented in Morand's complaint, i.e., the demand for payment of wages for accumulated earned overtime hours. As such, the legality of the State requiring its employees to take time off should be determined by the State Employees Appeals Commission pursuant to its authority in the New Act (IC 1971, 4-15-2-35 (Burns Code Ed.)). Although this remedy was unavailable before July 2, 1973, the State asserts Morand was first ordered to take time off *after* this administrative remedy had been established.

Morand responds the relief sought in his complaint and that sought in his "Motion For Preliminary Injunction And Hearing" are directly related and involve common questions of both law and fact. He further contends he should not be required to exhaust his administrative remedy with the State Employees Appeals Commission because the grievance procedure before the Commission did not exist until almost seven months after his action was filed.

## DECISION

CONCLUSION—It is our opinion that the trial court did not err in issuing the permanent injunction because Morand and his class were not required to exhaust an administrative remedy under the New Act that did not exist at the time judicial relief was sought.

The parties agree that no adequate administrative remedy was available to Morand at the time he filed suit on December 27, 1972. Jurisdiction over such claims was apparently in the State Personnel Board (the Board), but there was evidence in the testimony of Allen Frohmuth, Personnel Director for the State of Indiana, and in an entry in the *Official Minutes Book* of the State Personnel Board that the Board consistently refused to hear any employee grievances ". . . not involving a dismissal, demotion, suspension or layoff. . . ." *Official Minutes Book,* November 20, 1969, at 35. *See also* Ch. 139,

§ 36, [1941] Ind. Acts 387, *as amended,* Ch. 235, § 12, [1949] Ind. Acts 777.[3]

It is the State's position that the New Act which became effective in its present form on July 2, 1973 (about seven months after Morand's complaint was filed) provides a new statutory remedy for grievances such as those filed by Morand. The first paragraph[4] reads in part:

---

3. The 1949 version of this section (which was in effect on December 27, 1972) provided in part:

Any regular employee *who is dismissed, demoted, suspended, or laid off may appeal to the board* within fifteen (15) days after such action is taken. . . . (Emphasis supplied.)

The section as it now exists may be located at IC 1971, 4-15-2-35 (Burns Code Ed.).

4. The remainder of this section is:

. . . The following complaint procedure shall be followed:

Step I: The complaint shall be discussed by the employee and his immediate supervisor and, if a mutually satisfactory settlement has not been made within two [2] consecutive working days, such complaint shall be referred to Step II.

Step II: The complaint shall be reduced to writing and presented to the intermediate supervisor. If a mutually satisfactory settlement has not been reached within four [4] consecutive working days, such complaint shall then be referred to the appointing authority.

Step III: The appointing authority or his designated representative shall hold such hearings and conduct such investigations as he deems necessary to render a decision and shall make such decision in writing within ten [10] consecutive working days.

Should the appointing authority or his designated representative not find in favor of the employee, the complaint may be submitted within fifteen [15] calendar days to the state personnel director. The director or his designee shall review the complaint and render a decision within fifteen [15] calendar days. If the decision is not agreeable to the employee, an appeal may be submitted by the employee in writing to the commission no later than fifteen [15] calendar days from the date the employee has been given notice of the action taken by the personnel director or his designee. After submission of the appeal, the commission shall, prior to rendering its decision, grant the appealing employee and the appointing authority a public hearing, with the right to be represented and to present evidence. With respect to all appeals, the commission shall render its decision within thirty [30] days after the appeal is submitted. If the commission finds that the action against the employee was taken on the basis of politics, religion, sex, age, race or because of membership in an employee organization, the employee shall be reinstated to his position without loss of pay. In all other cases the appointing authority shall follow the recommendation of the commission which may include reinstatement and payment of salary or wages lost by the employee which may be mitigated by any wages the employee earned from other employment during a dismissed or suspended period.

· Employee complaint procedure—Appeal to commission— Reinstatement—Arbitration.—*Any regular employee may file a complaint if his status of employment is involuntarily changed or if he deems conditions of employment to be unsatisfactory. . . .* (Emphasis supplied.)

While ·Indiana has long followed the doctrine of exhaustion of administrative remedies,[5] implicit in all reported cases is the assumption that the statutory remedy is *available* at the time the challenged judicial relief is sought. The General rule is stated in 73 C.J.S., *Public Administrative Bodies and Procedure* § 41, at 354:

The rule [requiring exhaustion of administrative remedies] is inapplicable when no administrative remedy is provided. . . .

Indiana seems to have recognized the rule, e.g., *Public Service Commission of Indiana et al.* v. *City of Indianapolis* (1956), 235 Ind. 70, 131 N.E.2d 308;

Such statutory procedure must be followed *at least to the extent of the remedy available* before resort is made to any

---

If the recommendation of the commission is not agreeable to the employee, the employee, within fifteen [15] calendar days from receipt of the commission recommendation, may elect to submit the complaint to arbitration. The cost of arbitration shall be shared equally by the employee and the state of Indiana. The commissioner of labor shall prepare a list of three [3] impartial individuals trained in labor relations, and from this list each party shall strike one [1] name. The remaining arbitrator shall consider the issues which were presented to the commission and shall afford the parties a public hearing with the right to be represented and ·to present evidence. The arbitrator's findings and recommendations shall be binding on both parties and shall immediately be instituted by the commission. [Acts 1941, ch. 139, § 36, p. 387; 1949, ch. 235, § 12, p. 777; 1967, ch. 339, § 2, p. 1287; 1971, P.L. 35, § 15, p. 181; 1973, P.L. 20, § 6, p. 72.]

5. *State ex rel. Paynter* v. *Marion Cty. Sup. Ct., Room No. 5* (1976), 264 Ind. 345, 344 N.E.2d 846; *Broomes* v. *City of East Chicago* (1976), 168 Ind. App. 348, 342 N.E.2d 893; *Indiana High School Athletic Association* v. *Raike* (1975), 164 Ind. App. 169, 329 N.E.2d 66; *Brutus* v. *Wright* (1975), 163 Ind. App. 366, 324 N.E.2d 165; *Cooper* v. *County Board of Review of Grant County* (1971), 150 Ind. App. 232, 276 N.E.2d 533; *Board of ·Zoning Appeals, East Gary, et al.* v. *Stevens* (1968), 142 Ind. App. 200, 233 N.E.2d 672; *City of E. Chicago* v. *Sinclair Ref. Co.* (1953), 232 Ind. 295, 111 N.E.2d 459;· *City of Fort Wayne* v. *Bishop* (1950), 228 Ind. 304, 92 N.E.2d 544.

common law or equitable remedy. 235 Ind. at 83 (citations omitted). (Emphasis added.)

See also Broomes v. City of East Chicago (1976), 168 Ind. App. 348, 342 N.E.2d 893; Cooper v. County Board of Review of Grant County (1971), 150 Ind. App. 232, 276 N.E.2d 533; Decature County R. E. Mem. Corp. v. Public Service Co. (1971), 150 Ind. App. 193, 275 N.E.2d 857; City of E. Chicago v. Sinclair Ref. Co. (1953), 232 Ind. 295, 111 N.E.2d 459.

The State, without the benefit of any discernible reasoning, concludes that at the time the injunction was granted (March 4, 1974), the New Act was in effect and its remedies should have been pursued by Morand because he was being involuntarily forced "to stay home on regularly scheduled work days" . . . a grievance unrelated to the demand in his complaint demanding payment of accumulated earned overtime. The distinction is an artificial one . . . without a difference. Throughout the controversy Morand has sought to be *paid* for earned overtime. So, the grievance began when Morand and other State employees were not paid for earned overtime hours, and eventually resulted in his complaint demanding payment many months before the New Act was effective. The use of the injunction was merely another means of securing payment by preventing the State from liquidating payment due through forced idleness. Morand therefore was not subject to the New Act on any such distinction in the nature of the relief sought.

Neither is Morand subject to the New Act by giving it retroactive effect.

Indiana has long adhered to the principle that an amendatory act is to be generally construed to be prospective in application.

See State ex rel. Mental Health Com'r. v. Estate of Lotts (1975), 165 Ind. App. 347, 332 N.E.2d 234; Slater v. Stoffel (1966), 140 Ind. App. 131, 221 N.E.2d 688; Cummins v. Pence (1910), 174 Ind. 115, 91 N.E. 529; 1A SUTHERLAND, Statutory Construction § 22.36.

The prospective operation is particularly favored if vested rights or obligations are affected by the amendatory legislation.

See State ex rel. Mental Health Com'r. v. Estate of Lotts, supra; Niklaus v. Conkling (1888), 118 Ind. 289, 20 N.E. 797; Hiatt v. Howard (1937), 104 Ind. App. 167, 8 N.E.2d 136.

Assuming without deciding that the New Act, an amendatory piece of legislation, did create an adequate administrative remedy for grievances by State employees before the newly established State Employees Appeals Commission, it admittedly affected rights and liabilities already accrued by creating a new administrative remedy where none had previously existed (see Pub. L. No. 20, § 6, [1973] Ind. Acts p. 59). There is no language in the New Act or elsewhere in the Public Law indicating a legislative desire to have the statute retroactively applied.

The only reasonable conclusion is that this amendatory legislation is intended to be prospective in application.

To conclude otherwise would be to require Morand to dance to a tune before the fiddler began to play.

Affirmed.

White, J., concurs; Staton, P.J., (by designation) concurs.

NOTE.—Reported at 349 N.E.2d 718.